COSTELLO, APPELLANT, *v.* GREAT FALLS IRON WORKS,
RESPONDENT.

(No. 4,305.)

(Submitted March 10, 1921.   Decided March 29, 1921.)

[196 Pac. 982.]

*Labor—"Wage Brokers"—Definition—Assignment of Wages—
When Void.*

Wages—"Wage Broker"—Definition.
   1.   One who parts with money, either directly or indirectly, in consideration of the assignment of wages, is a wage broker within the meaning of Chapter 56, Laws of 1911.
Same—Assignment to Wage Broker—When Void.
   2.   An assignment to a wage broker of wages not theretofore earned, but thereafter to be earned, is void as against the creditors of the assignor.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by W. P. Costello against the Great Falls Iron Works.   From a judgment for defendant, plaintiff appeals. Reversed with direction to render judgment for plaintiff.

Cause submitted on briefs of Counsel.

*Mr. Marr O'Connor,* for Appellant, and *Mr. W. P. Costello, pro se.*

*Messrs. Cooper, Stephenson & Hoover,* for Respondent.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This action was brought against defendant to recover moneys claimed to be due by reason of a writ of attachment having been served upon defendant in an action brought in a justice court by plaintiff against one J. J. Plassman.   The writ was

2. Validity of assignment of unearned wages, see notes in 5 **Ann. Cas.** 64; 6 Ann. Cas. 765; Ann. Cas. 1913B, 531.

served December 4, 1916. Judgment in the sum of $78 was entered against Plassman December 9, 1916, which judgment has never been paid. Plassman was a molder in the employment of defendant and, at the time of the service of the attachment, had earned $115.54, which was due and had not been paid. On the first day of November, 1916, Plassman made an assignment to one Stone, the clothier, for his wages to be earned thereafter during the month of November, 1916. On the sixth day of December, 1916, defendant paid to Stone all moneys then earned and due to Plassman. Defendant admits the judgment and service of the writ of attachment before the payment was made to Stone, but in its answer sets up the assignment as an affirmative defense to plaintiff's claim. The sole question involved in this appeal is whether or not the assignment was in violation of Chapter 56 of the Session Laws of the Twelfth Legislative Assembly (1911), known as the "Wage Brokers' Act."

In disposing of this question, it must first be determined [1] whether or not Stone was a wage broker within the meaning of that Act. Section 3 of the Act reads as follows: "Any person, company, corporation, or association parting with, giving or loaning money, either directly or indirectly to any employee, or wage-earner, upon the security of, or in consideration of any assignment or transfer of wages or salary of such employee, or wage-earner, shall be deemed to be a wage broker within the meaning of this Act." Under this section of the Act, Stone was a wage broker if he parted with, gave or loaned money to Plassman, either directly or indirectly, in consideration of the assignment.

The testimony of Stone discloses the fact that at the time [2] of the giving of the assignment to him, Plassman was indebted to him in excess of the amount that was received by him under the assignment, but that he told Plassman that if he would assign his wages to him (Stone), so he could pay his old account, he would advance him money—not on the assignment, but so that he might live and pay his bills. He also

testified as follows: "I paid a number of bills at restaurants and gave him cash to pay room rent. * * * I think in most cases I gave the money to Plassman to pay the bills but I don't know whether he paid them or not. * * * I will say that if I had not had the assignment I would not have advanced the money but I didn't advance it on the assignment. I advanced it as I agreed to if he would assign to me and pay that bill and I would see that he would live." It is clear from his testimony that moneys were paid by Stone to Plassman or for his benefit, and that such moneys would not have been paid if Plassman had not given to him the assignment. It is impossible to escape the conclusion that Stone, at least, was parting with money, either directly or indirectly, in consideration of the assignment and that therefore he was a wage broker.

Assuming that this statute is constitutional, which question is not raised in this case and which question we do not decide, and deeming it established that Stone was a wage broker within the meaning of the Act, was this particular assignment void under its provisions? Section 4 of the Act reads as follows: "No assignment of his or her wages or salary by any employee or wage-earner to any wage broker for his or her benefit shall be valid or enforceable, nor shall any employer or debtor recognize or honor such assignment for any purpose whatever, unless it be for a fixed and definite part or all, of the wages or salary theretofore earned." Section 10 of the Act reads as follows: "Any note, bill or other evidence of indebtedness and any assignment of wages or salary given to or received by any wage broker in violation of any of the provisions of this Act shall be void, as against the creditors of the assignor or transferor."

It is argued by defendant that it was not within the contemplation of the legislature that such a transaction as the one here involved should be prohibited, but that it was the design to prevent imposition upon wage-earners by money loaning sharks who would otherwise take advantage of the employee's

needs and extort from him unreasonable and unconscionable interest charges and bonuses. While without doubt it was one of the objects of this legislation to reach such practices, yet it is also apparent that it was the intention of the legislature that the creditors of the employee should be protected against the trickery of an unscrupulous debtor in conspiracy, with a third party who might take an assignment of wages thereafter to become due and then hand back to the employee moneys as he may need. In this particular case, while Stone may have been a legitimate creditor of Plassman, yet in co-operation with Plassman, he was allowing Plassman to receive the benefit of his wages to such an extent as his needs might require and at the same time was placing the funds beyond the reach of attachment by his other creditors. Even though Stone's intentions may have been all right, yet the result of his act was to work an injustice upon other creditors of Plassman. As the assignment was made November 1, 1916, to cover wages not theretofore earned, such assignment was in violation of the Act in question, and is void as against the appellant.

The judgment of the trial court is reversed, and it is ordered that judgment be rendered in favor of plaintiff as prayed for in his complaint.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.